UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Susan Gould,
        Claimant

        v.                                    Case No. 11-cv-485-SM
                                              Opinion No. 2012 DNH 182
Michael J. Astrue, Commissioner,
Social Security Administration,
        Defendants

**O R D E R**

        Pursuant to 42 U.S.C. § 405(g), Claimant Susan Gould, moves
to reverse the Commissioner's decision denying her application
for Social Security Disability Insurance Benefits under Title II
of the Social Security Act, 42 U.S.C. § 423 (the "Act").  The
Commissioner objects and moves for an order affirming his
decision.

**Factual Background**

I.    Procedural History

        On June 2, 2009, claimant filed an application for social
security disability insurance benefits ("DIB benefits"), alleging
that she had been unable to work since July 29, 2007.  She
asserted eligibility for benefits based on disabilities due to
"constant pain and pressure, fatigue, diminished motor skills,
diminished cognitive abilities, memory loss, shortness of breath,
dizziness, numbness in her feet, and depression."  Jt. Stmt.,

doc. no. 11, pg. 2.  Her application for benefits was denied and
she requested an administrative hearing before an Administrative
Law Judge ("ALJ").

On February 25, 2011, claimant (who was then 39 years old),
her attorney, and an impartial vocational expert appeared before
an ALJ.  Claimant's husband testified on her behalf.  On March
17, 2011, the ALJ issued his written decision, concluding that
claimant was not disabled.  On August 18, 2011, the ALJ's
decision became the final decision of the Commissioner when the
Appeals Council denied claimant's request for review.  <u>Id</u>.

Claimant then filed a timely action in this court, appealing
the denial of DIB benefits.  Now pending are claimant's "Motion
for Order Reversing Decision of the Commissioner" (document no.
9) and the Commissioner's "Motion for Order Affirming the
Decision of the Commissioner" (document no. 12).

II.  <u>Stipulated Facts</u>

Pursuant to Local Rule 9.1(d), the parties submitted a Joint
Statement of Material Facts which, because it is part of the
court record (document no. 11), need not be recounted in this
opinion.

**Standard of Review**

I.   <u>Properly Supported Findings by the ALJ are
     Entitled to Deference</u>.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to
enter, upon the pleadings and transcript of the record, a
judgment affirming, modifying, or reversing the decision of the
Commissioner of Social Security, with or without remanding the
cause for a rehearing."  Factual findings of the Commissioner are
conclusive if supported by substantial evidence.[1]  <u>See</u> 42 U.S.C.
§ 405(g); <u>Irlanda Ortiz v. Secretary of Health & Human Services</u>,
955 F.2d 765, 769 (1st Cir. 1991).  Moreover, provided the ALJ's
findings are supported by substantial evidence, the court must
sustain those findings even when there may also be substantial
evidence supporting the contrary position.  <u>See</u> <u>Tsarelka v.
Secretary of Health & Human Services</u>, 842 F.2d 529, 535 (1st Cir.
1988) ("[W]e must uphold the [Commissioner's] conclusion, even if
the record arguably could justify a different conclusion, so long
as it is supported by substantial evidence.").  <u>See also
Rodriguez v. Secretary of Health & Human Services</u>, 647 F.2d 218,
222 (1st Cir. 1981) ("We must uphold the [Commissioner's]

---

[1]  Substantial evidence is "such relevant evidence as a
reasonable mind might accept as adequate to support a
conclusion."  <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229
(1938).  It is something less than the weight of the evidence,
and the possibility of drawing two inconsistent conclusions from
the evidence does not prevent an administrative agency's finding
from being supported by substantial evidence.  <u>Consolo v. Federal
Maritime Comm'n.</u>, 383 U.S. 607, 620 (1966).

findings in this case if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.").

In making factual findings, the Commissioner must weigh and resolve conflicts in the evidence.  See <u>Burgos Lopez v. Secretary of Health & Human Services</u>, 747 F.2d 37, 40 (1st Cir. 1984) (citing <u>Sitar v. Schweiker</u>, 671 F.2d 19, 22 (1st Cir. 1982)).  It is "the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [Commissioner], not the courts."  <u>Irlanda Ortiz</u>, 955 F.2d at 769 (citation omitted).  Accordingly, the court will give deference to the ALJ's credibility determinations, particularly when those determinations are supported by specific findings.  See <u>Frustaglia v. Secretary of Health & Human Services</u>, 829 F.2d 192, 195 (1st Cir. 1987) (citing <u>Da Rosa v. Secretary of Health & Human Services</u>, 803 F.2d 24, 26 (1st Cir. 1986)).

II.   <u>The Parties' Respective Burdens</u>

An individual seeking Social Security disability benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected

to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Act places a heavy initial burden on claimant to establish the existence of a disabling impairment. See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Secretary of Health & Human Services, 944 F.2d 1, 5 (1st Cir. 1991).  To satisfy that burden, claimant must prove that her impairment prevents her from performing her former type of work. See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985) (citing Goodermote v. Secretary of Health & Human Services, 690 F.2d 5, 7 (1st Cir. 1982)).  Nevertheless, claimant is not required to establish a doubt-free claim.  The initial burden is satisfied by the usual civil standard: a "preponderance of the evidence."  See Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982).

If claimant demonstrates an inability to perform her previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that she can perform.  See Vazquez v. Secretary of Health & Human Services, 683 F.2d 1, 2 (1st Cir. 1982).  See also 20 C.F.R. §§ 404.1512(g).  If the Commissioner shows the existence of other jobs that claimant can perform, then the overall burden to demonstrate disability remains with claimant.  See Hernandez v.

Weinberger, 493 F.2d 1120, 1123 (1st Cir. 1974); Benko v. Schweiker, 551 F. Supp. 698, 701 (D.N.H. 1982).

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) claimant's subjective claims of pain and disability, as supported by the testimony of claimant or other witnesses; and (3) claimant's educational background, age, and work experience.  See, e.g., Avery v. Secretary of Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote, 690 F.2d at 6.  When determining whether a claimant is disabled, the ALJ is also required to make the following five inquiries:

    (1)  whether claimant is engaged in substantial gainful activity;

    (2)  whether claimant has a severe impairment;

    (3)  whether the impairment meets or equals a listed impairment;

    (4)  whether the impairment prevents claimant from performing past relevant work; and

    (5)  whether the impairment prevents claimant from doing any other work.

20 C.F.R. § 404.1520.  Ultimately, a claimant is disabled only if his:

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age,

education, and work experience, engage in any other
kind of substantial gainful work which exists in the
national economy, regardless of whether such work
exists in the immediate area in which he lives, or
whether a specific job vacancy exists for him, or
whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).


With those principles in mind, the court reviews claimant's
motion to reverse and the Commissioner's motion to affirm his
decision.


## Discussion

I.   <u>Background — The ALJ's Findings</u>

In concluding that claimant was not disabled within the
meaning of the Act, the ALJ properly employed the mandatory five-
step sequential evaluation process described in 20 C.F.R.
§ 404.1520.  He first determined that claimant had not been
engaged in substantial gainful employment since her alleged onset
of disability.  Next, he concluded that claimant has the severe
impairments of Chiari malformation and obesity, and further found
that she did not have any severe mental impairments.
Administrative Record ("Admin. Rec.") 13.  Nevertheless, the ALJ
determined that those impairments, regardless of whether they
were considered alone or in combination, did not meet or equal

one of the impairments listed in Part 404, Subpart P, Appendix 1.
Id. at 12.

Next, the ALJ concluded that claimant retained the residual
functional capacity to perform "light work . . . except she
should never climb ladders, ropes, or scaffolds, but could
perform all other postural activities occasionally . . . [and]
must avoid all exposure to heights." Id. at 15.  The ALJ
concluded, therefore, that claimant "was capable of performing
past relevant work as a bank teller, cashier, and hotel desk
clerk," and other jobs in the national economy. Id. at 19-20.

Consequently, the ALJ concluded that claimant was not
"disabled" at any time relevant to his decision. Id. at 20.

On appeal from the Commissioner's final decision, claimant
argues that the ALJ improperly assessed her mental limitations
and erred in discounting her allegations of disabling pain.

II.  Claimant's Mental Impairment

Claimant contends that the ALJ's assessment of her mental
impairment was erroneous in two respects.  First, she says, the
ALJ committed reversible error at Step 2 when he found that her
mental impairment was not severe.  She posits, secondly, that the

ALJ improperly assessed the opinion of her treating psychologist, Dr. Tonya Warren.

A.  <u>Step 2</u>

The ALJ found that claimant had a medically determinable mental impairment of "adjustment disorder."  Admin. Rec. 14.  He concluded, however, that, for claimant, the "adjustment disorder is not a severe impairment."  <u>Id</u>.  Specifically, he found that claimant's mental impairment "does not cause more than a minimal [effect] on her ability to perform basic mental work activities."  <u>Id</u>.  Claimant challenges that finding.

"It is well established in this circuit 'that the Step 2 severity requirement is ... to be a <u>de</u> <u>minimus</u> policy, designed to do no more than screen out groundless claims.'"  <u>Mohammad v.</u> <u>Astrue</u>, 2011 WL 1706116, at *7 (D.N.H. April 4, 2011) (quoting <u>McDonald v. Secretary of Health & Human Services</u>, 795 F.2d 1118, 1124 (1st Cir. 1986)).  Accordingly, the ALJ may make a finding of "'non-severe'" at Step 2 only where, "'even if [the claimant] were of advanced age, had minimal education, and a limited work experience,'" the impairment "'would not prevent . . . her from engaging in' . . . substantial gainful activity."  <u>McDonald</u>, 795 F.2d at 1124-25 (internal alterations omitted) (quoting SSR 85-28, 1985 WL 56856, at *3).  In other words, the Commissioner

may summarily deny benefits at Step 2 only "'to those applicants with impairments . . . which could <u>never</u> prevent a person from working.'"  <u>Id</u>. at 1125 (quoting <u>Baeder v. Heckler</u>, 768 F.2d 547, 553 (3d Cir.1985)).

Although, here, the ALJ at Step 2 discussed claimant's mental impairment in some detail, he erred in finding that claimant had not met the <u>de</u> <u>minimus</u> showing.  Claimant's medical records disclose that the consultative psychologist diagnosed her with "adjustment disorder, with mixed disturbance of anxiety and depression."  Jt. Stmt., doc. no. 11, pg. 13.  Similarly, claimant's treating psychologist, Dr. Tonya Warren, diagnosed her as having "adjustment disorder with anxiety."  <u>Id</u>. at pg. 16. Over the course of several sessions, Dr. Warren treated claimant for the disorder through "cognitive behavior therapy, supportive therapy, and interpersonal treatment."  <u>Id</u>.  Dr. Warren opined that claimant had "marked" and "severe" limitations in several areas of functioning as a result of her disorder.  <u>Id</u>. at pg. 17.

On this record, which consists of undisputed diagnoses of "adjustment disorder," a course of psychological treatment for the disorder, and a medical opinion from claimant's treating psychologist that the limitations stemming from the disorder are more than "minimal," claimant plainly met her <u>de</u> <u>minimus</u> Step 2

burden with respect to her mental impairment.  <u>See</u> <u>Mohammad</u>, 2011
WL 1706116, at *7 (<u>de</u> <u>minimus</u> burden at Step 2 was met where
claimant "was diagnosed by several physicians ... as having a
seizure disorder" and was being treated for it).


    Nevertheless, although the ALJ erred at Step 2, it appears
that the error was harmless.  A Step 2 error is not grounds for
reversal of the Commissioner's decision where the ALJ "continued
through the remaining steps and considered all of the claimant's
impairments." <u>Syms v. Astrue</u>, 2011 WL 4017870, at *1 (D.N.H.
Sept. 8, 2011) (DiClerico, J).  After finding at Step 2 that
claimant had the severe impairments of "Chiari malformation and
obesity," Admin. Rec. 13, the ALJ proceeded through the remaining
steps of the five-part sequential analysis.  Moreover, in the
course of determining claimant's RFC, the ALJ considered
claimant's mental limitations.  He discussed Dr. Warren's opinion
about the severity of claimant's mental limitations, accorded
that opinion "little weight," and gave reasons for doing so.
Admin. Rec. 18.  The ALJ's Step 2 error was, then, harmless.  <u>See</u>
<u>Syms</u>, 2011 WL 4017870, at *1 (citing <u>Lewis v. Astrue</u>, 498 F.3d
909, 911 (9th Cir. 2007) ("The decision reflects that the ALJ
considered any limitations posed by the bursitis at Step 4.  As
such, any error that the ALJ made in failing to include the
bursitis at Step 2 was harmless.")).

B.   <u>Dr. Warren's Opinion</u>

Claimant next argues that, in determining her RFC, the ALJ improperly assessed the evidence of limitations arising from her mental impairment.   In particular, she objects to the ALJ's assessment of Dr. Warren's opinion that her mental impairment markedly and severely limits her ability to function in relevant areas.   She contends the ALJ erred in according only "little weight" to Dr. Warren's opinion.[2]

Claimant began seeing Dr. Warren in 2009, and saw her seven additional times through December, 2010.   On January 31, 2011, Dr. Warren "completed a check-mark worksheet opinion regarding Plaintiff's mental limitations . . . . [and] opined that Plaintiff would have extreme or marked limitations," Jt. Stmt., doc. no. 11, pg. 17, in, among other things, "maintaining attention and concentration for four two-hour segments per day, completing a normal workday and workweek," "maintain[ing] regular attendance," "understanding, remembering, and carrying out detailed instructions, regularly performing activities within a schedule, performing at a consistent pace, being punctual, acting appropriately with the public, responding to criticism from supervisors, and responding to changes in the work setting."

_____

2  The VE testified that the limitations found by Dr. Warren would preclude full-time work.

Admin. Rec. 18.  Dr. Warren also checked-off the "moderate"
limitations box for "remembering, understanding, and carrying out
short and simple 1-2 step work procedures with simple
instructions, sustaining an ordinary routine, working alongside
others, asking questions, and maintaining neatness and
cleanliness of the work areas with customary tolerance."  <u>Id</u>.

     In discussing the weight that will be ascribed to the
opinions of "treating sources," the pertinent regulations
provide:

> Generally, we give more weight to opinions from [the
> claimant's] treating sources, since these sources are
> likely to be the medical professionals most able to
> provide a detailed, longitudinal picture of [the
> claimant's] medical impairment(s) ... When we do not
> give the treating source's opinion controlling weight,
> we apply the factors listed [in this section] in
> determining the weight to give the opinion.  We will
> always give good reasons in our notice of determination
> or decision for the weight we give [the claimant's]
> treating source's opinion.

20 C.F.R. § 404.1527(c)(2).  <u>See</u> <u>also</u> SSR 96-2p, Policy
Interpretation Ruling Titles II and XVI: Giving Controlling
Weight to Treating Source Medical Opinions, 1996 WL 374188 (July
2, 1996).

     Notably, a treating provider's opinion may be entitled to
less weight when it is in a "worksheet" or checklist format,

unaccompanied by explanation.  See Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (a provider's checkmark opinion on a standardized multiple choice form was "not particularly informative").  See also Pacheco v. Astrue, 2009 WL 453370, at *4 (D.N.H. Feb. 24, 2009); 20 C.F.R. § 404.1527(c)(3) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion.").

    Here, in according "little weight" to Dr. Warren's January 2011, checklist opinion, the ALJ explained that Dr. Warren's treatment notes from sessions with claimant "do not provide a basis for these restrictions."  Admin. Rec. 18.  The ALJ pointed out that in her April 2010, notes, Dr. Warren states that claimant's short-term memory problem was "mild" and "most likely the result of stress."  Id.  And when Dr. Warren met with claimant in June of 2009, she noted that claimant "displayed an appropriate appearance and affect, normal mood and speech, and intact cognitive functioning."  Jt. Stmt., doc. no. 11, pg. 12. At that time, Dr. Warren "assigned [claimant] a global assessment of functioning (GAF) score of 61-70," id., which is indicative of mild symptoms.  Boston v. Astrue, 2011 WL 2491120, at *5 n.14 (D.N.H. June 22, 2011) (Barbadoro, J.).

The ALJ also observed that claimant's treatment history with other providers does "not document excessive no-shows or lateness for appointments that would support the opinion that the claimant could not maintain regular attendance or sustain an ordinary routine"; they do not describe claimant "as unable to interact appropriately"; and they note claimant's "independent activities of daily living." Id.

Although, as claimant points out, some treatment notes from her nurse practitioner can be viewed as corroborating Dr. Warren's opinion, the same nurse, in June 2010, noted that claimant "denied anxiety, depression, or sleep disturbances" and "exhibited an appropriate affect and demeanor." Jt. Stmt., doc. no. 11, pgs. 16-17. In addition, as the ALJ noted (albeit in his Step 2 discussion), the examining consultative psychologist, Dr. Anna Hutton, diagnosed claimant with adjustment disorder, but did not endorse marked and extreme limitations resulting from that mental impairment (although she noted some limitations due to pain). Admin. Rec. 14. The state agency reviewing psychologist, Dr. J. Coyle, after considering claimant's medical history, including Dr. Hutton's report, found that claimant's "adjustment disorder with anxiety and depression" resulted in only "mild" limitations in daily activities, social functioning, maintaining concentration, persistence, and pace. Jt. Stmt., doc. no. 11,

pg. 18.  Finally, as the ALJ noted, claimant did not pursue therapy in 2009 "as she felt her issues stemmed from pain and medical symptoms and could not be addressed psychologically." Id.  See Perez Torres v. Secretary of Health & Human Services, 890 F.2d 1251, 1255 (1st Cir. 1989) (lack of treatment is relevant to ALJ's inquiry into severity of impairments).

In light of the foregoing, the court cannot conclude that the ALJ erred in his assessment of Dr. Warren's opinion, nor in his overall assessment of limitations resulting from claimant's mental impairment.  To be sure, there is substantial evidence in the record supporting claimant's assertion that her mental disorder makes life quite difficult for her, as Dr. Warren opined.  Importantly, however, there is also substantial evidence in the record to support the ALJ's conclusion that she was not disabled.  The ALJ resolves evidentiary conflicts, and when the ALJ's determination is supported by substantial evidence it must be affirmed.  See Irlanda Ortiz, 955 F.2d at 769.

III.  Claimant's Allegations of Disabling Pain

When a claimant demonstrates that her impairment could reasonably be expected to produce the symptoms she alleges, the ALJ is required to determine the intensity, persistence, and limiting effects of those symptoms.  20 C.F.R. § 404.1529(c).  In

16

making that determination, the ALJ must evaluate the claimant's "statements about the effects of her symptoms ... in light of the medical evidence and other evidence such as precipitating and aggravating factors, medications and treatment, and how the symptoms affect the applicant's daily living." Syms, 2011 WL 2972122, at *4 (citing 20 C.F.R. § 404.1529(c)(3)).  Moreover, "[p]art of the ALJ's credibility determination necessarily involves an assessment of a claimant's demeanor, appearance, and general 'believability.'"  Guerin v. Astrue, 2011 WL 2531195, at *6 (D.N.H. June 24, 2011).

Whatever the ALJ's credibility determination, he must provide an explanation for it which "make[s] clear to the individual and to any subsequent reviewers the weight [he] gave to the [claimant's] statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *2.

Claimant here argues that the ALJ did not, as required, "include a proper explanation for [his] credibility finding," and "failed to properly assess Ms. Gould's subjective complaints of pain."  Document No. 9-2, pg. 7.  Neither contention is supportable.

17

A.   <u>ALJ's Explanation for His Credibility Finding</u>

Claimant testified that she is "limited by severe intermittent headaches, head pain, neck pain, shoulder pain, and back pain," which, she says, "contributed to make her confused and easily overwhelmed."  Jt. Stmt., doc. no. 11, pg. 18.  She further testified that her symptoms "snowballed after her surgery" for Chiari malformation.  <u>Id</u>.  Resulting limitations, according to claimant, include "difficulty finishing her housework and playing with her child"; becoming overwhelmed, such that her "brain would 'shut down'"; "difficulty carrying the laundry"; and a need to "lay down at least three times a day." <u>Id</u>.

In rejecting claimant's allegations of disabling pain, the ALJ stated:

> Although the claimant may experience pain and numbness in her body, this has not been established through substantial evidence to be of disabling proportions. Accordingly, the undersigned cannot credit the claimant's testimony and allegations regarding pain to the extent she has alleged.

Admin. Rec. 17-18.  Claimant characterizes this credibility finding as "nothing more than a generalized statement" and "the only explanation that the ALJ gives for discrediting years worth of medical records."  Doc. No. 9-2, pg. 8.

Granted, when taken out of context, the ALJ's conclusion seems, well, conclusory.  But read in context, the statement constitutes a summary finding that concludes a multi-paragraph discussion of evidence that the ALJ expressly, and properly, considered, and which was relevant to his credibility determination under 20 C.F.R. 416.929(c).  See Admin. Rec. 15-17. Moreover, the ALJ's reasons (i.e., his "explanation") for his credibility finding are apparent throughout his discussion of the evidence.  He points out, for example, the inconsistency between claimant's prior report of pain with her hearing testimony; the broad scope of claimant's daily activities; and the consultative examiner's observations of claimant's posture, gait, demeanor, and mood.  See Admin. Rec. 17.  In compliance with SSR 96-7p, the ALJ's credibility finding, therefore, unquestionably "make[s] clear to the [claimant] and to any subsequent reviewers what weight the adjudicator gave to the individual's statements and the reasons for that weight."  SSR 96-7p, 1996 WL 374186, at *2.


B.   The ALJ's Assessment of the Evidence

The court also necessarily rejects claimant's argument that the ALJ failed to properly assess her subjective complaints of pain.  As noted, the ALJ pointed to substantial evidence that tended to undermine claimant's allegations.  In addition, the ALJ found claimant's allegations of disabling symptoms inconsistent

with the fact that her treating neurosurgeon released her with no activity restrictions and no need to return for further treatment.  Admin. Rec. 16.  The ALJ also gave great weight to the opinion of the state agency reviewing physician, Dr. Hugh Fairley, that claimant was capable of work at the light exertional level.

The court finds, therefore, that substantial evidence supports the ALJ's determination that claimant's allegations of disabling pain are not credible.

## Conclusion

For the foregoing reasons, claimant's motion to reverse the decision of the Commissioner (document no. 9) is denied.  The Commissioner's motion to affirm his decision (document no. 12) is granted.  The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

October 31, 2012

cc:  Kelie C. Schneider, Esq.
     Christopher J. Seufert, Esq.
     Robert J. Rabuck, AUSA

20